UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **ARMIN SANABRIA ALZERRECA** | **CASE NO.  1:25-CV-02080 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KRISTI NOEM ET AL** | **MAGISTRATE JUDGE PEREZ-MONTES** |

**MEMORANDUM ORDER**

Pending before the Court is an Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI") [Doc. No. 4] filed by Petitioner, Armin Sanabria Alzerreca ("Petitioner"). After carefully considering Petitioner's filings and the applicable law, the Motion is **DENIED**.

### I. BACKGROUND

Petitioner is a citizen of Bolivia.[1] In 2023, Petitioner illegally entered the United States without inspection and was subsequently paroled under INA § 212(d)(5).[2] On or about February 8, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services.[3] On February 28, 2025, Petitioner filed Form I-485, Application to Adjust his Status, and Petitioner's wife filed a Form I-130, Petition for Alien Relative.[4] Both remain pending.[5] On July 17, 2025, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear and the United States Immigration and Customs

---

[1] [Doc. No. 1, p. 3].
[2] [Doc. No. 4-1, p. 2].
[3] [Id.].
[4] [Doc. No. 1, pp. 4–5].
[5] [Id.].

Enforcement ("ICE") arrested and detained Petitioner at the New York Asylum Office in Bethpage, New York.[6] Petitioner was then moved to Winn Parish Correctional Facility in Winnfield, Louisiana, where he remains detained.[7] On August 8, 2025, DHS filed a motion to pretermit Petitioner's asylum application before the immigration court and argued Petitioner be removed to Honduras, pursuant to a third-country removal agreement between the United States and Honduras.[8] Despite Petitioner's objections, the Immigration Judge granted DHS's motion to pretermit.[9]

On October 21, 2025, the Immigration Judge ordered Petitioner removed to Honduras, via third-country removal.[10] A notice of appeal was timely filed by the Petitioner and remains pending before the Board of Immigration Appeals.[11] Petitioner filed a Petition for Writ of Habeas Corpus [Doc. No. 1] ("Habeas Petition") before this Court on December 19, 2025, seeking immediate release from custody.[12] On December 24, 2025, Petitioner filed this Motion to enjoin Respondents from detaining Petitioner and to release Petitioner from custody immediately.[13] Thus, in both his Habeas Petition and this Motion, Petitioner argues that his continued detention violates his right to due process and seeks immediate release from detention.[14]

The Court is prepared to rule.

---

[6] [Id. at p. 5].
[7] [Id.].
[8] [Id.].
[9] [Id.].
[10] [Id.].
[11] [Doc. No. 4-1, p. 3].
[12] [Doc. No. 1, p. 2].
[13] [Doc. No. 4-1, p. 2].
[14] [Id. at pp. 2–3]; [Doc. No. 1, pp. 6–7].

## II.   LAW AND ANALYSIS

Federal courts may issue a TRO or PI *ex parte* or after notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

But it does not say when courts may issue them. In *Winter v. Nat. Res. Def. Council, Inc.*, the Supreme Court laid a four-part test that lower courts must follow when considering whether to issue a preliminary injunction. 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

The Supreme Court, very recently, reminded lower courts that PIs are, as their name suggests, preliminary and should "not conclusively resolve legal disputes." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). In other words, they should not be used to rule on the final, merits question.

Rather, TROs and PIs help "preserve the status quo until a trial" or other final disposition is rendered. *Lackey*, 604 U.S. at 193. That begs the question: what does it mean to preserve the status quo? While the words "status quo" do not appear within Rule 65 or the *Winters* factors, it is implicit in the "irreparable harm" prong. Courts

sometimes describe irreparable harm as those injuries, which "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citation omitted). But that is only one side of the coin. Irreparable harm must also take away "the court's ability to render a meaningful decision on the merits." *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *see also* Samuel L. Bray, *The Purposes of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573.

Here, Petitioner seeks the same relief in his underlying Habeas Petition—immediate release from detention.[15] Liberty is inarguably the most paramount natural right. And true, the Fifth Circuit has held even momentary loss of a right constitutes irreparable injury. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). But context matters. In *Opulent Life Church*, the plaintiff leased property for a new church but was denied a renovation permit by the defendants. *Id.* at 283. In finding the defendant's act caused irreparable harm, the Fifth Circuit noted that the plaintiff "will lose its lease if it is not allowed to operate in its leased property." *Id.* at 297. So, a final ruling on the merits is too little, too late. Again, the inquiry is

---

[15] [Doc. No. 1, pp. 6–7]; [Doc. No. 4-1, pp. 2–3].

whether something suggests a final ruling would not grant the plaintiff the prayed-for relief. *See Callaway*, 489 F.2d at 573.

Petitioner cannot show either that he faces imminent removal or the existence of something else that would make a favorable ruling on the Habeas Petition too little, too late. Petitioner alleges the violations of his Fifth Amendment right to substantive and procedural due process permit a *per se* finding of irreparable harm.[16] Additionally, Petitioner claims his continued detention causes irreparable harm as he is unable to attend interviews for his pending I-130 and I-485 applications while detained.[17] As such, Petitioner's Motion fails because an assertion of unlawful detention, without evidence of imminent removal or other circumstances rendering habeas relief ineffective, is insufficient to show irreparable harm.

The Court notes that these findings may change. If Defendants' actions change Petitioner's circumstances such that the Court could not eventually redress Petitioner's claims, preliminary relief might be appropriate. Accepting Petitioner's contention that any unlawful detention warrants preliminary relief would circumvent the Congressionally-selected procedures set forth in the habeas statute, 28 U.S.C. § 2241. This Court declines to do so.

### III. CONCLUSION

For these reasons,

**IT IS ORDERED** that Petitioner's Motion [Doc. No. 4] is **DENIED**.

---

[16] [Doc. No. 4-1, p. 7].
[17] [Id.].

**IT IS FURTHER ORDERED** that the Habeas Petition [Doc. No. 1] is referred to the Magistrate Judge.

MONROE, LOUISIANA, this 30th day of December 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE